UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JAVAD KAVIANI, INDIVIDUALLY, AND AS SPECIAL ADMINISTRATOR ON BEHALF OF ESTATE OF KAREN MARIE WILSON, DECEASED,

Plaintiff,

v.

CALIBER HOME LOAN, *et al.*,

Defendants.

Case No. 2:19-cv-00111-MMD-CWH

ORDER

**I.     SUMMARY**

*Pro se* Plaintiff Javad Kaviani sued Caliber Home Loan, Inc. ("Caliber" or "Defendant"), and Quality Loan Service Corporation ("Quality") because Caliber refused to sell its interest in a deed of trust encumbering real property located at 10400 Sloping Hill Ave., Las Vegas, Nevada (the "Property"), to an LLC controlled by Plaintiff, even though Plaintiff's brother purchased a homeowners' association lien that also encumbered the Property, and because Caliber attempted to foreclose on the Property several times even though Plaintiff's brother had entered bankruptcy. (ECF No. 1-1.) Plaintiff alleges six causes of action arising under state common law. (*Id.*) Caliber removed based on diversity of citizenship.[1] (ECF No. 1.) Before the Court are Plaintiff's motion to remand because of an insufficient amount in controversy ("Motion to Remand") (ECF No. 12), Caliber's motion to dismiss the case ("Motion to Dismiss") (ECF No. 14), and Plaintiff's *ex parte* motion for a temporary restraining order preventing the Property

---

[1]Quality consented to removal. (ECF No. 7 at 3.)

from being sold at a foreclosure sale on July 19, 2019 ("TRO Motion") (ECF No. 26).[2] Because the Court agrees with Defendants—for various reasons, as explained below—the Court will deny Plaintiff's Motion to Remand, grant Caliber's Motion to Dismiss,[3] and deny Plaintiff's TRO Motion as moot.

**II.     BACKGROUND**

The facts described herein are mostly adapted from Plaintiff's Complaint.

Karen Marie Wilson and her husband purchased the Property in 1998 by obtaining a loan ("Loan") subject to a mortgage agreement and a corresponding deed of trust encumbering the Property (the "DOT"). (ECF No. 1-1 at 4.) Caliber now owns the Loan and DOT. (*Id.*) In 2002, the Property was transferred to Wilson as her sole property. (*Id.*) Sometime after that, Wilson stopped paying her homeowners' association ("HOA") dues. (*Id.*) The HOA encompassing the Property foreclosed on the Property under NRS § 116.3116, *et seq.* (*Id.*)

Non-party Ahmad Kaviani[4] purchased the HOA's interest in the Property at a foreclosure sale in 2017. (*Id.*) Specifically, the deed evidencing Ahmad Kaviani's interest in the Property states, "HOA Foreclosure Deed – Subject to First Mortgage Superiority Amount Satisfied." (ECF No. 1-1 at 24.) Plaintiff further alleges "[t]hat Ahmad Kaviani

---

[2]The Court has also reviewed the parties' responses, replies, and joinders to these motions. (ECF Nos. 17, 18, 21, 22, 23, 24.)

[3]Quality joined Caliber's Motion to Dismiss (ECF No. 15), Caliber's response to Plaintiff's Motion to Remand (ECF No. 18), and Caliber's reply in support of its Motion to Dismiss (ECF No. 24). In these documents, Quality states that there are no specific facts or allegations of wrongdoing directed at Quality in Plaintiff's Complaint, and that it joins Caliber's arguments in full. (*See, e.g.*, ECF No. 24 at 1.) In addition, Quality points out that it only served as the foreclosure trustee as to the Property, and therefore had no contact with Plaintiff before June 8, 2018. (*See, e.g.*, ECF No. 15 at 1.) The Court agrees with Quality it is similarly situated to Caliber, albeit not as directly involved with Plaintiff, and will therefore consider Plaintiff's allegations against Quality in conjunction with his allegations against Caliber.

[4]Plaintiff says Ahmad Kaviani is his brother. (ECF No. 22 at 5, 7, 8.)

2

purchased the subject property through the HOA foreclosure sale, fully aware that the HOA Foreclosure Deed would be subject to the first mortgage." (*Id.* at 8.)

In October 2017, an entity called KIC Funding LLC[5] ("KIC") agreed with Ahmad Kaviani and Wilson to purchase the Property for the amount required to pay off the mortgage. (*Id.* 4.) But Wilson tragically passed away in November 2017. (*Id.*) So they were apparently never able to consummate their agreement.

Meanwhile, nobody appears to have been paying the mortgage. Thus, Caliber sought to foreclose on the Property for the amount it was owed under the mortgage agreement, setting a foreclosure auction for June 8, 2018. (*Id.* at 5.) Ahmad Kaviani filed for bankruptcy protection the day before the sale was set to occur, June 7, 2018. (*Id.*) In addition, sometime before the foreclosure sale, Plaintiff negotiated with Caliber to pay off the mortgage on the Property for $185,000, including tendering a cashier's check for that amount, but Caliber rejected Plaintiff's offer. (*Id.*) The foreclosure sale thus went ahead as scheduled, but nobody purchased the Property, so it reverted to Caliber. (*Id.*)

On June 12, 2018, non-party Bill Waller of Platinum Properties posted a notice of foreclosure on the Property's door. (*Id.*) In doing so, Mr. Waller told a tenant who had just moved in that the Property had been foreclosed upon, was now owned by Caliber, and that Caliber planned to evict the tenant. (*Id.*) The tenant was upset. (*Id.* at 6.) The tenant refused to pay Ahmad Kaviani any rent, and demanded compensation to cover the cost of moving into and out of the Property. (*Id.*)

Ahmad Kaviani then contacted Quality to ask why the foreclosure sale had occurred even though he had filed for bankruptcy. (*Id.*) Quality's counsel told Ahmad Kaviani the foreclosure sale would be rescinded because Quality had overlooked Ahmad Kaviani's bankruptcy filing. (*Id.*) On August 13, 2018, Ahmad Kaviani's bankruptcy petition was dismissed. (*Id.*) Caliber again noticed the Property for a foreclosure auction

---

[5]Plaintiff also says he "is the sole owner and operator of KIC Funding LLC. He is KIC Funding." (ECF No. 22 at 7.)

on October 12, 2018, and Ahmad Kaviani again filed for bankruptcy on October 11, 2018. (*Id.* at 7.) That bankruptcy petition was dismissed on April 5, 2019. (ECF No. 14 at 5.)

On October 19, 2018, a state probate court in Las Vegas tasked with settling Wilson's estate declared that Ahmad Kaviani is the legal owner of the Property and quieted title in his favor. (ECF No. 14-3 at 4.) In that same order, Plaintiff was appointed the Special Administrator of Wilson's estate, an appointment limited in scope to "quieting and declaring title" to the Property. (*Id.* at 5; *see also* ECF No. 1-1 at 16.)

On July 2, 2019, another notice—indicating another foreclosure attempt—was posted on the Property's door. (ECF No. 26 at 1.) That notice stated the foreclosure sale will occur on July 19, 2019. (*Id.*) Plaintiff filed the TRO Motion on July 15, 2019, seeking to prevent the foreclosure sale from taking place on July 19. (*Id.*)

Plaintiff's Complaint asserts six claims: (1) breach of the covenant of good faith and fair dealing; (2) tortious interference; (3) unjust enrichment; (4) restraint of trade; (5) fraudulent misrepresentation; and (6) specific performance. (ECF No. 1-1.) Claims 1 and 6 relate to Caliber's refusal to sell its interest in the Property to Plaintiff to date, where claim 6 seeks an order directing Caliber to sell its interest in the Property for a particular price. (*Id.* at 12-13.) Claims 2-5 relate to Caliber's attempts to foreclose on the Property while Ahmad Kaviani repeatedly filed for bankruptcy, basically alleging that Caliber's foreclosure attempts harmed Ahmad Kaviani's ability to collect rent on the Property because one or more of his tenants refused to pay rent when they learned the Property was being foreclosed on, and harmed both Plaintiff and Ahmad Kaviani because they have paid for upkeep of the Property.

///
///
///

### III. MOTION TO REMAND (ECF NO. 12)[6]

This is a diversity case that Caliber removed to this Court. (ECF No. 1 at 3-4.) Plaintiff moves to remand because he is seeking monetary damages in excess of $50,000 and brings claims under state law. (ECF No. 12 at 1-2.) He further states he would like the Court "to remand the case back to the State Court so that he can seek injunctive relief against Caliber before the Property is sold at foreclosure." (*Id.* at 2.) Defendant counters it properly removed this case because Plaintiff seeks injunctive relief regarding the Property, which is worth more than the $75,000 jurisdictional amount-in-controversy threshold. (ECF No. 17 at 3-4.) The Court agrees with Defendant.

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. *See* U.S. Const. art. III, § 2, cl. 1; *see also, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit at commencement of the action. *See* 28 U.S.C. § 1441(a). However, courts strictly construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The party seeking removal bears the burden of establishing federal jurisdiction. *See id.* at 566-57.

To establish subject matter jurisdiction pursuant to diversity of citizenship under § 1332(a), the party asserting jurisdiction must show: (1) complete diversity of citizenship among opposing parties and (2) an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332(a). Where it is not facially evident from the complaint that $75,000 was in controversy at the time of removal, a defendant seeking removal must prove, by a

---

[6]Plaintiff phrases his motion as an opposition to Caliber's petition for removal, but the Court construes it as a motion to remand.

preponderance of the evidence, that the amount in controversy requirement is met. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

Under that preponderance of the evidence standard, a removing defendant must "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds" the jurisdictional minimum. *Id.* at 1117 (citations omitted). As to the kind of evidence that may be considered, the Ninth Circuit has adopted the "practice of considering facts presented in the removal petition as well as any 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Conclusory allegations are insufficient. *See Matheson*, 319 F.3d at 1090 (citation omitted).

The Court finds Defendant has carried its burden to show that the amount in controversy exceeds $75,000. Defendant proffered a copy of the tax assessment records for the Property showing an assessed value of $163,637 for the 2019-2020 fiscal year. (ECF No. 17 at 3-4 (citing ECF No. 17-1 at 2).) Defendant also points to Plaintiff's allegation in his Complaint that as of June 8, 2018, $215,141.12 was owed on the mortgage secured by the Property. (ECF No. 17 at 4 (citing ECF No. 1-1 at 5).) "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (citation omitted). Here, because Plaintiff admittedly seeks injunctive relief, the object of the litigation is the Property. *See Fresquez v. Nationstar Mortg.*, LLC, Case No. 2:16-cv-01274-KJD-NJK, 2017 WL 1024269, at *2 (D. Nev. Mar. 16, 2017); *Wong v. Countrywide Home Loans, Inc.*, Case No. 2:16-cv-1012-JCM-CWH, 2017 WL 80253, at *2 (D. Nev. Jan. 9, 2017). Whether the Court considers the value of Property, or the amount owed on the mortgage, the amount in controversy requirement is satisfied here because both amounts exceed $75,000. (ECF Nos. 1-1 at 5, 17-1 at 4.) *See also Fresquez*, 2017 WL 1024269, at *2; *Wong*, 2017 WL 80253, at *2. The Court will therefore deny Plaintiff's Motion to Remand.

## IV. MOTION TO DISMISS (ECF NO. 14)

Defendant moves to dismiss Plaintiff's case because he lacks standing in his individual capacity, and he fails to state a claim in his capacity as the special administrator of Wilson's estate. (ECF No. 14.) Defendant also moves to dismiss for failure to join necessary parties, and substantively attacks the merits of Plaintiff's individual claims. However, because the Court agrees with Defendant that Plaintiff lacks standing to bring this case in his individual capacity, and fails to state a claim in his capacity as the special administrator of Wilson's estate, the Court will focus on those two arguments herein, and grant Defendant's Motion to Dismiss in its entirety.

### 1. Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See Id.* at 679. A claim is facially plausible when the plaintiff's

complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). That is insufficient. A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

Particular care is taken in reviewing the pleadings of a *pro se* party, for a more forgiving standard applies to litigants not represented by counsel. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Still, a liberal construction may not be used to supply an essential element of the claim not initially pled. *See Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). If dismissal is appropriate, a *pro se* plaintiff should be given leave to amend the complaint and notice of its deficiencies, unless it is clear that those deficiencies cannot be cured. *See Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995).

### 2. Individual Capacity

Caliber argues Plaintiff lacks standing to maintain this suit in his individual capacity because he cannot show constitutionally-required injury—he is not a party to the Loan, has no ownership interest in the Property, and has not alleged any agreement, written or oral, between himself and Caliber. (ECF No. 14 at 6-7.) Plaintiff counters he has standing because he made Caliber an offer for KIC to buy Caliber's interest in the Property, and because Caliber and Quality's counsel communicated with him. (ECF No. 22 at 4-5.) The Court agrees with Caliber.

Whether a plaintiff has standing depends on whether a plaintiff has fulfilled the "case or controversy" requirement of Article III. To satisfy Article III, a plaintiff "must show

that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

Plaintiff lacks standing to maintain this lawsuit in his individual capacity because he cannot show he has suffered an injury in fact. *See Friends of the Earth*, 528 U.S. at 180 (stating that injury in fact is required to establish standing). The primary personal harm alleged by Plaintiff in his Complaint is that Caliber declined to sell its interest in the Property to an LLC he controlled at his desired price. (ECF No. 1-1 at 8-9, 12-13.) But Caliber had no duty to sell the Property to Plaintiff, especially at his desired price, so those allegations simply cannot establish the injury in fact necessary to give him standing. Finding otherwise would violate basic principles of contract law. The other personal harm Plaintiff alleges is that he has spent money on the upkeep of the Property that he will not be able to recover if Caliber forecloses on it. (ECF No. 1-1 at 10.) But even accepting Plaintiff's allegations in his Complaint as true, Plaintiff has no individual ownership interest in the Property—his brother does. (*Id.* at 4.) Thus, to the extent Plaintiff spent money on the Property, he is not entitled any of that money if Caliber forecloses on the Property.

The remainder of Plaintiff's allegations in his Complaint relate to harm suffered by his brother, not Plaintiff—who is not a party. Moreover, Plaintiff, as a *pro se* party, cannot represent his brother, even had his brother been identified as a plaintiff.[7] *See, e.g.*,

---

[7]Plaintiff's brother is not a named Plaintiff or otherwise a party to Plaintiff's Complaint. (ECF No. 1-1.) Further, the Court questions whether even Plaintiff's brother

9

*Hillygus v. Doherty*, Case No. 3:18-cv-00212-MMD-WGC, 2018 WL 6729637, at *1 n. 1 (D. Nev. Dec. 21, 2018), *aff'd*, Case No. 3:18-cv-00212-MMD-WGC, ECF No. 104 at 1-2 (dismissing appeal as frivolous and stating that *pro se* parties may not represent other parties). And any harm suffered by Plaintiff's brother cannot convey standing on Plaintiff. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) (emphasizing that Plaintiffs must allege facts showing that they, themselves, are injured).

In sum, the Court will dismiss Plaintiff's claims to the extent he brings them in an individual capacity because he lacks standing. To address Plaintiff's remaining argument as to standing, the fact that Defendants' counsel communicated with him does not convey standing upon him. As explained above, the standing inquiry focusses on the alleged harm suffered by the Plaintiff, not the conduct of Defendants' counsel. Defendants' counsel's communications with Plaintiff are simply irrelevant to the standing analysis.

### 3. Capacity as Special Administrator

Plaintiff further fails to state a claim to the extent he brings his Complaint as the Special Administrator of Wilson's estate. The Court will therefore dismiss his Complaint under Fed. R. Civ. P. 12(b)(6) as to his role as the Special Administrator of Wilson's estate.

The incurable flaw at the heart of Plaintiff's allegations as the Special Administrator of Wilson's estate is that he does not even allege Wilson's estate has been harmed by any of Defendants' conduct. As discussed above, Plaintiff alleges that he has been harmed (because Caliber refused to sell to him, which does not even give him standing), and his brother has been harmed. Nowhere does Plaintiff allege anything that could be construed as harm to Wilson's estate. In addition, Wilson's estate no longer has any interest in the Property. (ECF No. 14-3 at 3.) Thus, the disputes swirling around the

---

would have standing to sue Caliber. He purchased the Property subject to Caliber's DOT (ECF No. 1-1 at 4), and is not a party to that DOT or its corresponding mortgage agreement. Thus, he cannot indefinitely prevent Caliber from exercising its rights under the DOT. Said otherwise, Caliber owes Plaintiff's brother no duty.

Property can no longer harm Wilson's estate—as a matter of law. The Court will therefore grant Caliber's Motion to Dismiss as to Plaintiff's claims brought in his capacity as the special administrator of Wilson's estate without wading too deeply into the substance of Caliber's other arguments raised in its Motion to Dismiss.

However, the Court notes that the specific claims alleged in Plaintiff's Complaint suffer from many substantive defects that would provide alternative routes to dismissal if taken. For example, Plaintiff's claim for breach of the covenant of good faith and fair dealing fails because, "a party cannot breach the covenant of good faith and fair dealing before a contract is formed." *Jung v. BAC Home Loans Servicing, LP*, Case No. 2:10-cv-2236 JCM GWF, 2011 WL 2462248, at *2 (D. Nev. June 17, 2011) (citation omitted). Plaintiff's allegations as to this claim appear to go to Caliber's rejection of Plaintiff's offer to purchase its interest in the Property, which lack any allegations evidencing a contract. These allegations also do not relate to Plaintiff's role as Special Administrator of Wilson's estate. Thus, Plaintiff's claim for breach of the covenant of good faith and fair dealing fails as a matter of law. Further, "[a] financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money[.]" *Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1235 (D. Nev. 2009) (citation omitted). Here, Plaintiff has made no allegations that Caliber acted as anything beyond a lender of money as regards its relationship with Wilson. Therefore, even if Plaintiff's allegations related at all to Wilson's estate, the Court questions whether Plaintiff could state a plausible claim for relief against Caliber as Special Administrator of Wilson's estate.

The Court will therefore dismiss Plaintiff's claims to the extent he brings his Complaint as the special administrator of Wilson's estate for failure to state a claim.

### 4. Leave to Amend

When, as here, the Court grants a motion to dismiss, it must then decide whether to grant leave to amend. The Court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, repeated failure to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of ... the amendment, [or] futility of the amendment." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). This is such a case. The deficiencies in Plaintiff's Complaint cannot be cured through amendment because they arise from the very nature of his lawsuit. Plaintiff cannot establish he has standing under these facts, or any consistent facts, as to his claims asserted in his individual capacity. Further, in his capacity as the special administrator of Wilson's estate, he cannot state a claim under these or any consistent facts. Thus, amendment would be futile. The Court will dismiss all of Plaintiff's claims—including those brought in his personal capacity—with prejudice. *See Righthaven LLC v. Newman*, 838 F. Supp. 2d 1071, 1076 (D. Nev. 2011) (dismissing case with prejudice for lack of standing where amendment would have been futile).

**V.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the Court's decision.

It is therefore ordered that Plaintiff's motion to remand (ECF No. 12) is denied.

It is further ordered that Defendant Caliber Home Loan, Inc.'s motion to dismiss (ECF No. 14) is granted in its entirety.

It is further ordered that Plaintiff's claims are also dismissed as to Defendant Quality Loan Service Corporation because the Court finds Quality is similarly situated to Caliber, and Quality joined Caliber's Motion to Dismiss.

It is further ordered that Plaintiff's *ex parte* motion for a temporary restraining order (ECF No. 26) is denied as moot.

///

///

The Clerk of Court is directed to enter judgment in Defendants' favor in accordance with this order and close this case.

DATED THIS 17th day of July 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE